NIGHT BOX
FILED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

¹MAY 2 3 1996

CARLOS JUENKE
CLERK, USDC / SDFL / MIA

BENARD INDUSTRIES, INC. d/b/a
OTC PHARMACEUTICAL PRODUCTS,
a Florida corporation,

     Declaratory-Judgment Plaintiff
     and Counterclaim Defendant,

vs.

BAYER AKTIENGESELLSCHAFT,
a corporation of the
Federal Republic of Germany,

     Declaratory-Judgment Defendant
     and Counterclaim Plaintiff.

CIVIL ACTION NO.
95-1593-CIV-LENARD
Mag. Judge Johnson

## OTC'S MOTION TO DISMISS COUNT I (PARTIALLY) OF BAYER'S RE-AMENDED COUNTERCLAIM

    COMES NOW the Plaintiff/Counter-Defendant, Benard Industries, Inc. d/b/a OTC Pharmaceutical Products ("OTC"), and moves, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss the claim alleged in Paragraph 66 of Count I of the Re-Amended Counterclaim filed by the Defendant/Counter-Plaintiff, Bayer Aktiengesellschaft ("Bayer").

### MEMORANDUM OF LAW

    This is a case of senior trademark use by OTC in the United States and undue delay by Bayer in making an objection.  OTC seeks a declaratory judgment of non-violation of §§ 38 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1120 and 1125(a), and the common law of unfair competition.

## I.    BACKGROUND.

In December 1987, OTC adopted in good faith and began to use the trademark "CANESTEN", as well as a particular trade dress consisting of a standard white box with red lettering, and in some cases, a circular design with crisscrossing verbiage, for antifungal products.    Since that time, OTC's use has been continuous and exclusive in the United States.    In November 1989, OTC filed an application to register the mark "CANESTEN" with the U.S. Patent and Trademark Office, which application was published for opposition in the Official Gazette in July 1990. On October 2, 1990, OTC was duly and lawfully issued U.S. Trademark Registration No. 1,615,407 for the mark "CANESTEN" in connection with antifungal cream. OTC has widely advertised and achieved substantial sales of its "CANESTEN" antifungal products across the United States over a course of more than seven (7) years.    OTC has never knowingly exported, nor authorized export of its "CANESTEN" products.

Bayer has known of OTC's use of the mark "CANESTEN" for more than five (5) years, and in spite of such knowledge, Bayer has made no objection and has taken no action to oppose OTC's U.S. Trademark Registration.    Bayer has never used the mark "CANESTEN" or its alleged trade dress in the United States.

Once threatened by Bayer, OTC was forced to institute this action for declaratory judgment to defend its substantial investment. Bayer has counterclaimed, alleging, in its Re-Amended Counterclaim, unfair competition under the Lanham Act and the common law, unfair competition under the Paris Convention,

2

violation of Bayer's rights under Articles 7 and 20-22 of the Pan American Convention, and seeking cancellation of registration under the Paris Convention and Article 7 of the Pan American Convention.

## II. COUNT I CONTAINS INSUFFICIENT ALLEGATIONS.

OTC moves, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss the claim alleged in Paragraph 66 of Count I of Bayer's Re-Amended Counterclaim on the grounds that it fails to state a cause of action.

Count I of Bayer's Re-Amended Counterclaim alleges in part that:

> "OTC's supply of products, specially-tailored to Spanish-speaking consumers and bearing Bayer's trade dress and trademarks, to wholesalers, distributors and exporters engaged in the active exportation of pharmaceutical products to South American, Central American, and Caribbean countries in which Bayer owns registrations for the mark "CANESTEN," constitute acts of unfair competition in violation of 15 U.S.C. §1125(a) of the Lanham Act under 15 U.S.C. §§1126(b) and (h), and Bayer's common law rights."

(Bayer's Re-Amended Counterclaim, ¶66). The above-cited language is, for all intents and purposes, identical to that already dismissed (by Judge Davis and affirmed by this Court) in Count IV of the Amended Counterclaim. Benard Indus., Inc. v. Bayer Aktiengesellschaft, 38 USPQ2d 1422 (S.D.Fla. 1996). Moreover, just as the virtually identical language dismissed in Count IV of the Amended Counterclaim failed to state a cause of action, so too does the claim contained in Paragraph 66 of Count I fail to state a cause of action. See Alfred Dunhill Ltd. v. Interstate Cigar Co., 183 USPQ 193, 196 (2d Cir. 1974) (Lanham Act does not have

3

boundless application as a remedy for unfair trade practices). See also Resource Developers Inc. v. The Statue of Liberty-Ellis Island Foundation Inc., 17 USPQ2d 1842, 1845 (2d Cir. 1991); Toho Co., Ltd. v. Sears, Roebuck & Co., 645 F.2d 788, 792 (9th Cir. 1981); Gordon and Breach Science Publishers S.A. v. American Institute of Physics, 31 USPQ2d 1705, 1713 (S.D.N.Y. 1994); Westinghouse Elec. Corp. v. Rio Algom Ltd., 204 USPQ 449, 460 (N.D. Ill. 1979).

The Court dismissed Count IV of the Amended Counterclaim, in part, because "Bayer has not alleged any facts that indicate that OTC has a relationship with any exporter or agent involved in distribution of the allegedly infringing products." Benard Indus., 38 USPQ2d at 1425. Even in its Re-Amended Counterclaim, Bayer has still failed to correct this fundamental pleading defect, because it has not alleged that OTC's customers export the allegedly infringing product, namely OTC's "CANESTEN." Bayer merely alleges that OTC's customers export some products; there is no allegation regarding "CANESTEN" products.

The broadest case on this issue, Scotch Whiskey Ass'n v. Barton Distilling Co., 338 F. Supp. 595 (N.D. Ill. 1971), relied upon a licensor/licensee relationship to impute knowledge and responsibility. Even if Bayer pleads specifically as to OTC's "CANESTEN" products, the claim still fails because there is no allegation as to OTC's knowledge or reason to know of alleged "CANESTEN" exports by its customers.

Moreover, Bayer's deposition campaign has failed to reveal any connection between OTC and an exporter of OTC's "CANESTEN." More

4

importantly, there is neither pleading nor proffer that OTC knowingly permits such exports. Again, Bayer's desperate hope that an additional ten (10) (or more) depositions will somehow "reveal" such a relationship is insufficient to support the existence of such a relationship.    Bayer's deficient pleading should not be allowed under the pretext that a relentless discovery expedition may reveal a fact necessary to support the allegations contained in a claim.  Judge Davis and this Court have already ruled that such pleading fails to state a cause of action.

## III. PARAGRAPH 66 OF COUNT I ALLEGES ESSENTIALLY A VIOLATION OF FOREIGN LAW, BUT WRAPS IT IN THE CLOAK OF U.S. LAW.

This Court has already determined that a "violation of [foreign] trademark law... does not support claims based on violation of the laws of the United States."  Benard Indus. , 38 USPQ2d at 1424 (citing, Majorica, S.A. v. Majorca Int'l, Ltd, 687 F.Supp. 92, 95-97 (S.D.N.Y. 1988)).  The issue before the Court at that time was the viability of Bayer's claim based upon a specific violation of the Convention of Central American States and El Salvador law.  Judge Davis correctly dismissed that aspect of the original and amended Count IV.

Now, Bayer invokes U.S. law for basically the same reason, but with a slightly different twist.  Essentially, Bayer argues that OTC's failure to prohibit exports has resulted in OTC's "CANESTEN" products being sold in foreign countries where Bayer owns "CANESTEN" registrations.  Put another way, Bayer argues that the

5

exports result in <u>a violation of foreign law</u>. It is a distinction without much of a difference. The basic thrust is still an alleged violation of foreign law, which is not sufficient to "support claims based on violation of the laws of the United States." <u>Id</u>.

## IV. CONCLUSION.

Bayer's concentration on exportation is merely an effort to obfuscate the true issue in this case, namely OTC's right to continued domestic use of the "CANESTEN" trademark as the senior user in the United States. The claim contained in Paragraph 66 of Count I of the Re-Amended Counterclaim should be dismissed, and the same is respectfully requested.

Respectfully submitted,

BENARD INDUSTRIES, INC., d/b/a
OTC PHARMACEUTICAL PRODUCTS

Dated: May 23, 1996

By: _____
John Cyril Malloy, III
Florida Bar No. 964,220
Jennifer K. Lawson
Florida Bar No. 57,835
MALLOY & MALLOY, P.A.
One Biscayne Twr., 37th Fl.
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone (305) 374-8418
Facsimile (305) 374-8048

6

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document was served upon Marlene K. Silverman, Esq. and Andres Rivero, Esq., GREENBERG, TRAURIG, et al., Attorneys for Defendant/Counter-Plaintiff, 1221 Brickell Avenue, Miami, Florida 33131, via first class United States Mail, postage pre-paid, this 23rd day of May, 1996.

By: _____
Jennifer N. Lawson
Florida Bar No. 57,835

7

**U.S. District Court
Southern District of Florida**

Benard Industries Inc. v. Bayer Aktiengesellschaft

No. 95-1593-CIV-DAVIS
Decided February 29, 1996

**TRADEMARKS AND UNFAIR TRADE PRACTICES**

**1. Unfair competition — State and common law (§395.03)**

Counterclaim does not fail to state claim for unfair competition under Florida common law, even though counterclaim does not allege that defendant first adopted and used "Canesten" mark for antifungal cream in that state, since failure to make such allegations would warrant dismissal only if unfair competition were based only on trademark infringement, and since counterclaim is instead based on trademark infringement as well as trade dress infringement and misleading and false advertising.

**2. Infringement; conflicts between marks — Likelihood of confusion — Particular marks — In general (§335.0304.01)**

**International issues — In general (§370.01)**

Counterclaim based on violation of foreign trademark law must be dismissed, since counterclaim does not seek remedy under Central American Convention for Protection of Industrial Property, but instead asks federal district court to find that plaintiff violated El Salvador's trademark and unfair competition laws as provided for in Central American Convention in such way that defendant deserves remedies pursuant to Lanham Act, Paris Convention or Pan American Convention, and since violation of another country's trademark laws does not support such claim for relief.

**3. Infringement; conflicts between marks — Passing off (§335.07)**

**International issues — In general (§370.01)**

Counterclaim alleging that plaintiff violated Lanham Act by failing to prohibit exportation of infringing "Canesten" antifungal cream products to El Salvador must be dismissed, since counterclaim has not alleged any facts indicating that plaintiff has relationship with any exporter or agent involved in distribution of allegedly infringing products.

**4. International issues (§370.01)**

**Unfair competition — In general (§395.01)**

Motion to dismiss counterclaims alleging that plaintiff engaged in unfair competition in violation of Paris Convention and Pan American Convention is denied, since parties have rights under Paris Convention which can be enforced, since Paris Convention may cover acts beyond those encompassed by more specific language of Lanham Act, and since plaintiff has alleged multiple factual bases for its unfair competition claim, including trademark infringement, trade dress infringement, false advertising, and use of trade dress.

Action by Benard Industries Inc. against Bayer Aktiengesellschaft, for declaratory judgment that it has not violated Lanham Act or common law of unfair competition for unfair competition in violation of Lanham Act and common law, unfair competition in violation of Paris Convention, cancellation of trademark registration, trademark infringement, trade dress infringement, and false advertising. On plaintiff's motions to dismiss all counterclaims except those for cancellation and for violation of Lanham Act. Granted in part and denied in part.

John Cyril Malloy III and Jennifer K. Lawson, of Malloy & Malloy, Miami, Fla., for plaintiff.

Gregor N. Neff, Theodore J. Mlynar, and William F. Lawrence, of Curtis, Morris & Safford, New York, N.Y., Marlene Koch Silverman and Andres Rivero, of Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, Miami, for defendants.

Davis, J.

*ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS COUNTS I (PARTIALLY), II, IV AND V OF AMENDED COUNTERCLAIM*

BEFORE THE COURT is Plaintiff/Counterclaim Defendant Benard Industries, Inc. d/b/a OTC Pharmaceutical Products' ("OTC") Motion to Dismiss Counts I (Partially), II, IV, and V of Amended Counterclaim (filed December 11, 1995). Defendant/Counterclaim Plaintiff Bayer filed a response on January 22, 1996 and OTC

filed a reply on the February 1, 1996. The motion is ripe for review.

**I. STANDARD OF REVIEW**

OTC moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss claims alleged in Counts I (partial), II, V, and V of the Amended Counterclaim. In the alternative, OTC moves pursuant to Fed. R. Civ. P. 12(e) for a more definite statement as to those Counts on the grounds that they are too vague or ambiguous for OTC to be required to form a responsive pleading.

For purposes of Fed. R. Civ. P. 12(b)(6) Motion to Dismiss, the complaint is construed in the light most favorable to the plaintiff and its allegations of material fact are taken as true. *Cannon v. Macon County, Apalachee Community Mental Health Services*, 840 F.2d 1558, 1565 (11th Cir. 1993); *Burch v. Apalachee Community Mental Health Services*, 840 F.2d 797, 798 (11th Cir. 1988) (citation omitted), *aff'd*, 494 U.S. 113 (1990). The Court's inquiry is directed to whether the allegations in the complaint constitute a statement of a claim under Fed. R. Civ. P. 8. *See Hishon v. King & Spaulding of America, Inc. v. City of Indian Rocks Beach, Fla.*, 434 F.2d 871, 879 (5th Cir. 1970). To state a claim, Federal Rule of Civil Procedure 8(a) requires, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the Plaintiff can prove no set of facts" that would entitle it to relief. *See Cannon*, 1 F.3d at 1565 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957)).[1] The party bears a heavy burden. *St. Joseph's Hospital, Inc. v. Hospital Corp. of America*, 795 F.2d 948, 953 (11th Cir. 1986).

**II. BACKGROUND AND SUMMARY OF THE COMPLAINT AND COUNTERCLAIMS**

Plaintiff/Counterclaim Defendant OTC, manufacturer of an antifungal cream called "CANESTEN", filed suit seeking declaratory judgment that its antifungal cream, and packaging of its antifungal cream, did not violate §§ 38 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1120 and 1125(a) or the common law of unfair competition. OTC alleges

that it adopted "in good faith" and began using the mark "CANESTEN" in 1987, and in interstate commerce as early as November, 1988. OTC further alleges that it has used the mark continuously and exclusively in the United States and was issued U.S. Trademark Registration No. 1,615,407 in October 1990 for the mark "CANESTEN" in connection with the cream. OTC seeks declaratory judgment it received a letter dated February 23, 1995 from Defendant/Counterclaim Plaintiff Bayer accusing OTC of unfair competition and fraudulent registration of the mark "CANESTEN".

In its Amended Answer and Counterclaim (filed November 20, 1995), Bayer states that it owns registrations for the trademark "CANESTEN" in more than 100 countries, that it has sold the "CANESTEN" for more than 25 years, and that "CANESTEN" is used for name and similar packaging on an antifungal product in several states and in South and Central America. Moreover, Bayer claims that OTC advertises its products in a false and misleading way that capitalizes on Bayer's worldwide reputation. Therefore, Bayer states five counterclaims: (I) unfair competition in violation of the Lanham Act and the common law; (II) unfair competition in violation of the Paris Convention as implemented through the Lanham Act; (III) cancellation of registration pursuant to the Paris Convention, the Pan American Convention, and the Lanham Act; (IV) trademark infringement and unfair competition in El Salvador in violation of the Central American Convention for the Protection of Industrial Property, the laws of El Salvador, and the Lanham Act; and (V) unfair competition and/or acts of false advertising in violation of the Pan American Convention.

Plaintiff's Motion to Dismiss challenges all of these interclaims except Counterclaim III and the portion of counterclaim I that alleges violation of the Lanham Act.

**III. DISCUSSION**

**A. Counterclaim I: Unfair Competition under the Lanham Act and Under the Common Law.**

OTC seeks dismissal of the common law portion of Bayer's first counterclaim because "Bayer has not alleged prior use of the alleged trademark and trade dress in the same area, namely Florida." (OTC's Motion to Dismiss, p.2.) In support of its argument, OTC cites to *Tally Ho, Inc. v. Coast Community College District* which provides that under the common law of the State of Florida, to state

[1] Decisions of the Fifth Circuit issued before October 1, 1981 are binding authority in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

a claim or unfair competition based on trademark or trademark infringement, Bayer was wrong. Among other elements, that it first adequately and accurately pleaded [or mark or logo or design] in a certain market or trade area, as a means of establishing good will and reputation and to describe, identify or denominate particular services offered by it (or goods made or sold by it) and to distinguish them from similar services rendered or offered (or similar goods marketed) by others. 889 F.2d 1018, 1026 [13 USPQ2d 1133] (11th Cir. 1989), quoting American Bank v. First American Bank & Trust, 455 So.2d 443, 445-46 (Fla. 5th DCA 1984). OTC argues, therefore, that Bayer's failure to allege that its use of the foreign trademark "CANESTEN" and Florida means that Bayer has failed to state a claim of common law unfair competition.

[1] OTC's argument holds true only when the unfair competition claim is based only upon the alleged trademark infringement. Tally Ho, 889 F.2d at 1026, n.14 (when unfair competition is based only upon alleged trademark infringement, the unfair competition claim would be practically identical to the infringement claim); Freedom Savings and Loan Ass'n v. Way, 757 F.2d 1176, 1186 [226 USPQ 123] (11th Cir.), cert. denied, 474 U.S. 845, 106 S. Ct. 134, 88 L. Ed. 2d 110 (1985).

However, where a claim of unfair competition is based on conduct that is not dispositive of an infringement claim, the "failure on the infringement claim would not automatically bar an unfair competition claim." Freedom Savings, 757 F.2d at 1186. As the Eleventh Circuit noted, the

unfair competition claim is a 'broader' one that requires the court to examine conduct . . . that would not be dispositive of an infringement claim. One example would be the use of packaging or 'trade dress' that is not protected by a registered trademark that nevertheless causes confusion between products.

Freedom Savings, 757 F.2d at 1186 (citing Sun Fun Products v. Suntan Research & Development, 656 F.2d 186, 192 [213 USPQ 91], (5th Cir. 1981)).

Similarly, in Babbit Electronics, Inc. v. Dynascan Corp., the Eleventh Circuit noted that a common law cause of action for unfair competition is analyzed in the same way that the court analyzed the relationship between §1125 and §114 of the Lanham Act such that a claim for unfair competition may render false advertising or description whether or not it involved trademark infringement.

38 F.2d 1161, 1181 [33 USPQ2d 1001] (11th Cir. 1994).

Therefore, keeping in mind the applicable standard, the Court addresses OTC's Motion to Dismiss because Bayer's claim for unfair competition is based on independent elements as well as trade dress and misleading and false advertising, and therefore states a claim for unfair competition under Florida common law.

B. Counterclaim IV: Trademark Infringement and Unfair Competition in El Salvador in violation of the Central American Convention for the Protection of Industrial Property and the Lanham Act.

In its Motion to Dismiss, OTC sought both 1) the clarification of the foreign law upon which Bayer based Counterclaim IV, and 2) dismissal of Counterclaim IV on the basis that it calls for application of foreign law in support of Bayer's claims under the Lanham Act. More specifically, OTC argued that El Salvador's trademark and unfair competition laws as established by the provisions of the Central American Convention for the Protection of Industrial Property, have no extraterritorial effect and cannot be used to support Bayer's federal claims. Majorica, S.A. v. Majorca Int'l, Ltd. 687 F. Supp. 92, 95-96 [7 USPQ2d 1872] (S.D.N.Y. 1988). In addition, OTC seeks dismissal of OTC's claim that failure to prevent the illegal or unauthorized export of OTC products constitutes a violation of Section 43(a) of the Lanham Act. OTC cites to considerable case law from the other jurisdictions in support of its argument that the Lanham Act does not impose an affirmative duty on a trademark owner to prevent illegal or unauthorized export of its products. See, e.g., Ressource Development v. Statue of Liberty-Ellis Island Foundation, Inc., 926 F.2d 134 [17 USPQ2d 1842] (2d Cir. 1991); Toho Co., Ltd. v. Sears, Roebuck & Co., 645 F.2d 788 [210 USPQ 547] (9th Cir. 1981) (Lanham Act protects against two types of unfair competition: infringement and false designation of origin of goods).

In response, Bayer provided additional information to reasonably identify the Treaty on which it based portions of Count IV. Moreover, argued that the court ought to pass over the fact that a claim based on the law of another country does not, in itself, justify dismissal. See Burt v. Isthmus Development Co., 218 F.2d 353, 357-58 (5th Cir.), cert. denied, 349 U.S. 922, 75 S. Ct. 661, 99 L. Ed. 1254 (1955). Finally, Bayer argued that the court should not dismiss its claim regarding OTC's failure to prohibit the exportation of its products to El

Salvador because a distributor of an infringing product is responsible for any harm done as a result of the deceit. See Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 853-54, [214 USPQ 1] (1982); Scandia Down Corp. v. Euroquilt, Inc., 772 F.2d 1423, 1430 [227 USPQ 138] (7th Cir. 1985); Burton Distilling Co., 438 F. Supp. 468, 499 [170 USPQ 455] (N.D. Ill. 1970), aff'd in part and rev'd in part on other grounds, 489 F.2d 809 [179 USPQ 712] (7th Cir. 1973).

[2] The Court will dismiss Bayer's claims based on the Convention of Central American States and El Salvador law because violation of El Salvador trademark law has no extraterritorial effect and does not support claims based on violation of the laws of the United States. Majorica, 687 F. Supp. at 95; United States Mills v. Eaton Co., 234 F.2d 633 [109 USPQ 438] (9th Cir.), cert. denied, 352 U.S. 871, 773, 36 S. Ct. 2d 76 [111 USPQ 468] (1956). The Court finds the reasoning of the Majorica court persuasive. In that case, the Plaintiff sought to amend its complaint to add causes of action based on the defendant's violation of Spanish trademark law. The Court refused to allow the amended complaint because "the trademark laws of a foreign country have no extraterritorial effect and cannot be asserted in support of federal claims in a United States District Court." Majorica, 687 F. Supp. at 95. It reasoned that since the Paris Convention agreed that the signatories to the Convention and their citizens would be equally protected by each signatory's domestic laws.

While it is true that the Court should not dismiss a claim simply because success or failure of the claim depends on application of foreign law, the Burt case, cited by Bayer, addressed the issue of dismissal on the basis of forum non conveniens. See 218 F.2d at 357-58. In the present case, however, Bayer's counterclaims do not seek a remedy under the Central American Convention. In Bayer's Amended Counterclaims, p. 12-13, (Bayer's Paris Convention, and the Pan American Convention. Thus, Counterclaim IV should be dismissed because it asks the court to find that OTC violated El Salvador's Trademark and Unfair Competition laws as provided for in the Central American Treaty in such a way that Bayer deserves remedies pursuant to the Lanham Act, Paris Convention and Pan American Convention. Violation of another country's trademark laws does not support such a claim for relief. See Majorica, 687 F. Supp. at 95.

[3] The Court will also dismiss the portion of Bayer counterclaim IV which alleges that OTC violated the Lanham Act by failing to prohibit the exportation of infringing prod-

ucts to El Salvador. Although the Court is obliged to take all of Bayer's allegations of material facts as true for the purposes of a motion to dismiss, Bayer has not alleged any facts that indicate that OTC has a relationship with any exporter or agent involved in distribution of the allegedly infringing products. Therefore, for the reasons stated above, even when construing Bayer's claim in the most liberal light, it is appropriate to dismiss Counterclaim IV.

C. Counts II and V: Unfair Competition Under The Paris Convention and the Pan American Convention.

OTC moves to dismiss Bayer's claims that OTC engaged in unfair competition in violation of Paris Convention (Count II) and the Pan American Convention (Count V). OTC's argument is two-fold. First, OTC argues that the claims for unfair competition under the two claims is duplicative of the Counterclaim I which alleges unfair competition in violation of section 43(a) of the Lanham Act. See Toho, 645 F.2d at 791; Scotch Whisky Ass'n v. Majestic Distilling Co., 958 F.2d 594, 597 [22 USPQ2d 1050] (4th Cir.), cert. denied, 506 U.S. 862, 113 S. Ct. 181, 121 L. Ed. 2d 126 (1992). Second, OTC argues that the language of the self-executing Pan American Convention precludes any separate remedy under the convention when domestic law such as the Lanham Act adequately addresses the issue of unfair competition.

In response, Bayer requests that the Court should not dismiss its claims because case law in this jurisdiction indicates that the Lanham Act does not provide the sole basis for relief. Specifically, Bayer argues that in addition to the Lanham Act, the Paris Convention is self-executing and provides a separate basis for relief for claims of unfair competition. See Davidoff Extension S.A. v. Davidoff Int'l, Inc., 612 F. Supp. 4, 9 (S.D. Fla. 1984) (King, J.), aff'd 774 F.2d 1178 (11th Cir. 1985), cert. denied, 475 U.S. 1122, 106 S. Ct. 1642, 90 L. Ed. 2d 187 (1986); Laboratorios Roldan v. Tex Int'l, Inc., 902 F. Supp. 1555, 1568 (S.D. Fla. 1995) (Moore, J.) (citing Davidoff, 612 F. Supp. at 9). Similarly, Bayer argues that the Pan American Convention remits a remedy where domestic law does not adequately address the claimant's basis for relief under the Convention. Thus, Bayer argues that the Court should not dismiss Counterclaims II and V which are based on the treaties themselves because OTC has failed to meet its burden of proving that the remedies under U.S. law are "adequate."

[4] Keeping in mind the standard for deciding a motion to dismiss, the Court agrees with Bayer and will not dismiss Count I upon which relief may be granted. The Court is persuaded by the reasoning contained in the *Davidoff* and *Roldan* decisions which indicate that parties have rights under the Paris Convention pursuant to that Convention. *Davidoff*, 612 F. Supp. at 8; *Roldan*, 902 F. Supp. at 1568-69. Accordingly, it does not appear that Bayer cannot prove any set of facts which would entitle it to relief under the Conventions as well as the Lanham Act.

Although the *Toho* court notes that citizens of foreign nations are entitled to the benefits of the Lanham Act to the extent necessary to give effect to provisions of the treaty, the *Toho* court does not address specifically whether rights may exist under the Paris Convention which are not adequately addressed by the Lanham Act. Similarly, in *Scotch Whisky*, the Fourth Circuit noted that the language in the Paris Union Convention and that the convention "may well cover acts of unfair competition beyond those related to trade-related to the unfair use of trademark." *Scotch Whisky*, 958 F.2d at 597. Although in *Scotch Whisky* the Fourth Circuit determined that the Paris Convention provided no greater protection than that already provided by the Lanham Act, the basis for that decision was that the only alleged unfair competition was the "unfair use of trademarks." Because Bayer alleges multiple factual bases for its claim of unfair competition, including infringement and false advertising and use of trade dress, the reasoning in *Toho* and *Scotch Whisky* does not persuade the Court that it is beyond doubt that Bayer can prove no set of facts which would entitle it to relief under the Conventions.

Accordingly, it is

ORDERED AND ADJUDGED that OTC's Motion to Dismiss is DENIED as to Count I, II, and V, but GRANTED as to Count IV.

---

**U.S. Court of Appeals**
**Ninth Circuit**

Western Medical Consultants Inc.
v.
Johnson

No. 93-35862

Decided April 8, 1996

**TRADEMARKS AND UNFAIR TRADE PRACTICES**

**1. Trade secrets — Employee non-competition agreements (§400.05)**

Defendant, by taking steps to open business in Alaska shortly before plaintiff, did not violate covenant not to compete with plaintiff for five years after termination of her employment within radius of 50 miles from any of plaintiff's offices, since noncompetition clause must be interpreted to prohibit defendant from opening business if at that time she knew or should have known that plaintiff intended to open competing business within 50 miles and within reasonably short period of time, and since record shows defendant was honestly convinced, due to plaintiff's apparent reluctance to pursue Alaska market, that plaintiff was not interested in developing that market.

**2. Trade secrets — Elements of trade secret (§400.03)**

Marketing plans and customer information used by defendant in starting business that provides independent medical evaluation services in Alaska are not trade secrets, since plaintiff's customer lists were compiled from various generally known and accessible sources, including yellow pages, industry publications, and appropriate state insurance agency, since plaintiff's marketing information was readily obtainable by anyone interested in starting IME company in Alaska and defendant gained knowledge of such information during regular course of employment with plaintiff, and since information defendant used was therefore generally known to public.

Appeal from the U.S. District Court for the District of Oregon, Redden, J.

Action by Western Medical Consultants Inc. against Shannon L. Johnson and Medical Evaluation of Alaska Inc. for breach of covenant not to compete, breach of fiduciary duty, and misappropriation of trade secrets. From judgment for defendants following bench trial, plaintiff appeals. Affirmed.

Charles F. Hudson and Jeffrey M. Batchelor, of Lane, Powell, Spears & Lubersky, Portland, Ore., for plaintiff-appellant.

William Artus, of Artus, Choquette, & Williams, Anchorage, Alaska, for defendants-appellees.

Before Fletcher,[*] Canby and Reinhardt, circuit judges.

Canby, J.

Western Medical Consultants, Inc. ("Western"), an Oregon corporation that provides independent medical examination ("IME") services,[1] appeals the district court's judgment after a bench trial. The court denied Western's request to enjoin Shannon Johnson, a former Western employee, from operating a business in competition with Western's IME business in Alaska.[2] *Western Medical Consultants, Inc. v. Johnson*, 835 F. Supp. 554 (D. Or. 1993).

On appeal, Western contends that, in opening her Alaska IME business, Johnson breached the covenant not to compete contained in her employment contract with Western, breached a fiduciary duty she owed to Western, and misappropriated trade secrets. We affirm.

**BACKGROUND**

In May 1989, Western hired Shannon Johnson as a full-time employee. Before she commenced her employment at Western, Johnson signed an Employee Confidentiality Agreement. The agreement included a covenant not to compete with Western, for five years after termination of her employment, within a radius of fifty miles from any Western office.

During the Summer of 1990, Western became interested in expanding its business to Alaska. Johnson was assigned to make Western IME services to customers in Alaska. In October 1990, Western sent Johnson to Anchorage to research the market potential. Before her trip, she submitted a memorandum listing her potential contacts. In Anchorage, Johnson assembled a list of prospects by looking in the yellow pages and calling potential customers. The purposes of her trip were to promote use of Western's

[*] Judge Tang was originally a member of this panel and heard argument in this case. He died prior to circulation of this opinion, and pursuant to General Order 3.2(g), Judge Fletcher was drawn as a replacement. Judge Fletcher has read the tape of the oral argument as well as the briefs and other materials received by the other members of the panel.

[1] As an IME business, Western arranges for the examination of patients by physicians with expertise in a variety of specialties.

[2] Western voluntarily dismissed its claims for damages.

IME services in Oregon by Alaska customers, as well as to explore possibilities for a Western office in Alaska. When she returned from Alaska, she prepared a written memorandum of her findings and recommendations. On November 22, 1990, Johnson bought a personal plane ticket to Alaska with a departure date of December 4, 1990.

On November 24-27, 1990, Johnson traveled to Alaska for the second time on Western's behalf. She was sent there in order to make a presentation regarding Western's IME services at an Alaska Adjusters Association meeting. Because of the last-minute authorization for this trip, however, Johnson was unprepared to make the presentation. She did attend the Adjusters Association luncheon and left Western promotional materials outside the door of the meeting room. In addition to her attendance at the Adjusters Association meeting, Johnson inspected a potential office site for Western.

After this trip, Johnson submitted a letter of resignation on November 30, 1990, and left for Alaska on her own ticket on December 4, 1990. On December 12, 1990, Western filed for an Alaska business license. Johnson filed articles of incorporation for her own IME business, Medical Evaluations of Alaska, Inc., on December 20, 1990, and filed for an Alaska business license on January 7, 1991. Johnson's first IME's were scheduled for January 12, 1991. Western began conducting IME's in Alaska on January 25, 1991.

Western filed this action in Oregon state court, alleging, *inter alia*, that Johnson had breached the covenant not to compete contained in her employment agreement, breached her fiduciary duty to Western, and misappropriated Western trade secrets. Johnson removed the action to federal court on diversity grounds. 28 U.S.C. § 1332. After a bench trial, the district court rendered a decision dismissing all of Western's claims.

**DISCUSSION**

We review the district court's findings of fact for clear error. *In re San Vicente Medical Partners, Ltd.*, 962 F.2d 1402, 1405 (9th Cir.), *cert. denied*, 506 U.S. 873 (1992). If the district court's account of the evidence is plausible in light of the record viewed in its entirety, we may not reverse it even if we are convinced that, had we been sitting as the trier of fact, we would have weighed the evidence differently. *Service Employees Int'l Union v. Fair Political Practices Comm'n*, 955 F.2d 1312, 1317 n.7 (9th Cir.) (quoting *Anderson v. Bessemer City*, 470